UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Basin Commerce, Inc. | |
| Plaintiff, | |
| v. | Court File No. 18-cv-2574-PAM-BRT |
| Celtic Marine Corporation, | |
| Defendant. | |

**INDEX OF EXHIBITS TO**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO TRANSFER**

The following exhibits are submitted in support of the memorandum of law accompanying the motion to transfer filed by Celtic Marine Corporation:

1. Exhibit A: Declaration of Tim Klein in Support of Defendants' Motion to Transfer

    A. Exhibit A-1: 2018 Spot Service Agreement – Contract #0422

    B. Exhibit A-2: Email of April 27, 2018

    C. Exhibit A-3: Emails of May 16, 2018, through July 24, 2018

    D. Exhibit A-4: Email of May 18, 2018

    E. Exhibit A-5: 2018 Spot Service Agreement Amendment I – Contract #0422

2. Exhibit B: Email of August 29, 2018

3. Exhibit C: Complaint of Celtic Marine Corporation, filed in the U.S. District Court for the Eastern District of Louisiana

1

Dated: September 26, 2018          /s/ VINCE C. REUTER

Robin D. Cassedy (La. Bar No. 36408)
    -*Pro Hac Vice (Admission Pending)*
KING & JURGENS, LLC
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
rcassedy@kingjurgens.com
(504) 582-3800

Daniel J. Cragg, Esq. (#389888)
Vince C. Reuter, Esq. (#390874)
ECKLAND & BLANDO LLP
800 Lumber Exchange Building
10 South Fifth Street
Minneapolis, Minnesota 55402
dcragg@ecklandblando.com
vreuter@ecklandblando.com
(612) 236-0160

*Counsel for Celtic Marine Corporation*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Basin Commerce, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Celtic Marine Corporation,<br><br>Defendant. | Court File No. 18-cv-2574-PAM-BRT |

### DECLARATION OF TIM KLEIN IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER

I, Tim Klein, declare as follows:

1. I am a resident of the full age of majority of Cook County, State of Illinois;

2. The statements set forth herein are based on my personal knowledge and are true and correct;

3. I am currently employed as the Executive Vice President of Sales and Marketing for Celtic Marine Corporation ("Celtic Marine");

4. In my role as Executive Vice President of Sales and Marketing, I communicated with representatives of Basin Commerce, Inc. ("Basin Commerce"), including Scott Stefan, regarding barges and barge transportation services to be provided to Basin Commerce by Celtic Marine. Pursuant to our discussions, Celtic Marine agreed to provide two barges to Basin Commerce for the transport of distillers dry grain.

5. I signed a contract entitled "2018 Spot Service Agreement – Contract #0422" ("the Agreement") on behalf of Celtic Marine. The Agreement embodied the terms of the agreement between Celtic Marine and Basin Commerce regarding barges and barge transportation services. A true and complete copy of the Agreement is attached hereto as Exhibit A-1.

{N1540494 -} 1 Exhibit A

6.    The Agreement was sent to Scott Stefan via email on April 27, 2018. A true and complete copy of the email sent to Stefan is attached hereto as Exhibit A-2.

7.    Pursuant to the obligations of Celtic Marine under the Agreement, I made arrangements with vendors to provide services related to the transport of distillers' dry grain. This included entering into an agreement with a carrier to provide two covered hopper barges to transport the grain.

8.    On May 16 and 17, 2018, I exchanged emails with Scott Stefan regarding the barges and barge transportation services retained by Basin Commerce pursuant to the Agreement. A true and complete copy of those emails is attached hereto as Exhibit A-3.

9.    I signed an amendment to the Agreement entitled "2018 Spot Service Agreement Amendment I – Contract #0422" ("Amendment to Agreement") on behalf of Celtic Marine. The Amendment to Agreement embodied the terms of the amended agreement between Celtic Marine and Basin Commerce. A true and complete copy of the Amendment to Agreement is attached as Exhibit A-4.

10.   The Amendment to Agreement was sent to Scott Stefan via email on May 18, 2018. A true and complete copy of the email sent to Stefan is attached hereto as Exhibit A-5.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 26, 2018 in Chicago, Illinois.

Tim Klein



# Celtic Marine and Logistics

### A FULL SERVICE LOGISTICS COMPANY

3888 S. Sherwood Forest Boulevard ▪ Celtic Centre Building I ▪ Baton Rouge, Louisiana 70816
Office: 225-752-2490 ▪ Fax: 225-752-2582 ▪ E-mail: info@celticmarine.com

## 2018 SPOT SERVICE AGREEMENT
## CONTRACT #0422

This Spot Service Agreement (Agreement) is entered into and made effective this 27th day of April 2018, between Celtic Marine Corporation (Seller) and Basin Commerce, Inc., with an address of 261 School Avenue, Suite 310, Excelsior, MN 55331 (Buyer). Seller and Buyer agree that Seller will provide the barge the barge transportation services under the terms and conditions specified below.

### TERMS AND CONDITIONS

| | |
|---|---|
| **CARGO:** | Distillers Dry Grain |
| **QUANTITY:** | Two Barges / Approximately 3200 ST |
| **EQUIPMENT:** | Covered hopper barges |
| **ORIGIN(S):** | Winona, MN (CD Corp) |
| **DESTINATION(S):** | New Orleans, LA (Mile 86.5 to Mile 180 LM) |
| **PLACEMENT PERIOD:** | 1 Barge – Mid to Late Week of April 30, 2018 – MTC 852B<br>1 Barge – Week of May 7, 2018 – MTC 691B<br>CP date to be worked out |
| **RATE(S):** | ███████████████ |
| **MINIMUM BILLING WEIGHT:** | 1600 ST |
| **FUEL ADJUSTMENT:** | N/A |
| **FREE TIME:** | 3 AP Shex at Origin / 3 AP Shex at Destination |
| **DEMURRAGE:** | ███████████████████ |
| **COVER HANDLING:** | Carrier will provide covered hopper barge (s) to buyer with the covers spread. All cover handling costs to facilitate loading and/or unloading at origin and/or destination will be for the account of buyer. |
| **CLEANING CHARGES:** | Buyer responsible for any cleaning charges over and above normal and customary. |
| **PAYMENT TERMS:** | Net 30 days from date of invoice |
| **VESSEL-S/S AGENT:** | None |
| **MISCELLANEOUS:** | None |

Revision Oct 2017

Exhibit A-1

**PARTIES:** As stated at the outset of this Agreement, the term "Seller" as used herein shall refer to Celtic Marine Corporation. Seller may assign this Agreement and the rights and obligations hereunder, but any such assignment shall not relieve Seller of its responsibilities for the performance of this Agreement. The term "Carrier" as used herein does not refer to Celtic Marine Corporation and shall not be deemed to include Celtic Marine Corporation, but shall refer to and include any entity or person rendering the transportation arranged by Seller hereunder. The term "Buyer" as used herein shall refer to the entity so designated on the first page of this Agreement. Buyer agrees that it is obligated for the payment of freight as set forth in this Agreement, regardless of whether it owns the cargo or whether it buys the services set forth in this Agreement on behalf of another entity or individual.

**NOTICE:** Carrier will require 14 days advance notice for any loadings. Failure to supply 14 days advance notice could result in carrier's inability to provide the barges required.

**ETAs/ORIGIN:** Any change in vessel ETA, constructive placement date request, or designated origin given to Seller in excess of 120 hours prior to the previous ETA will be accepted without charge. Any vessel ETA or designated origin change made on less than 120 hours notice could be subject to charges including but not limited to assessment of free days, and additional charges for shifting, fleeting, barge cleaning, or cover handling.

**CARRIER'S TARIFF:** In addition to the terms and conditions set forth in this Agreement, the services performed hereunder are subject to the rules and regulations published in the carrier's tariff, as supplemented, and the terms and conditions of carrier's bill of lading, copies of which are available to Buyer. In the event of any inconsistency or conflict between carrier's tariff, as supplemented, or the bill of lading, and the terms of this Agreement, the terms of this Agreement shall govern.

**PLACEMENT:**   Rates stated herein shall include only one actual placement of barges by Seller at origin and one placement at destination. Carrier will be responsible for only the first shift to and from origin and destination docks; free time will commence upon the first placement and will run (as will demurrage) until the barge is released. Any additional shifting of barges to accommodate loading or unloading shall be for Buyer's account and, if performed by Seller or Carrier, will be charged at Seller's prevailing rate for such service.

**BARGE RELEASES:** Barge release information must be sent to Seller via fax (225) 752-2582 and/or email to operations@celticmarine.com.

**CLEANING AND ACCEPTANCE:** Seller shall tender barges of a type and condition suitable for the cargo to be carried. Commencement of loading of the barges shall constitute Buyer's acceptance of the condition and suitability of the barges for the intended cargo. Rates do not include cleaning expense above the maximum stated on page 1 of this Agreement or that results from cargo or debris left aboard the barge in excess of normal cleaning (including working surfaces, gunnels, covers, decks, etc.) by Buyer or its agents at both loading and unloading points. Any charges (including charges for lost barge days computed under the provisions hereof) encountered by Seller above the maximum allowed on page 1 of this Agreement or for removal of such cargo or debris shall be in addition to the rate and for Buyer's account.

**LOADING AND UNLOADING:** Proper and prompt loading and unloading of cargo shall be Buyer's responsibility and shall be accomplished by Buyer at its sole expense. Buyer shall comply with Carrier's instructions regarding height of load, weight of cargo, draft of barge and such other instructions as Carrier may deem desirable for safe transportation. Buyer shall be subject to the demurrage charges provided above for any delay or detention of barges occasioned by non-compliance with Carrier's instructions. Buyer shall distribute cargo in barge to ensure an even draft. If not so loaded, Buyer shall, at its expense, make such redistribution as will meet Carrier's requirements, in which event the barge shall be subject to demurrage charges provided above from time of placement of barge until acceptance of barge by Seller. Any additional cost or expense incurred by Seller as a result of improper loading or unloading shall be for the account of Buyer. Further, Buyer shall be responsible for the prompt unloading of the cargo at destination and shall be liable for any deterioration or damage to the cargo and shall be responsible for payment of all additional freight and demurrage that incurred for any delay in unloading of cargo by Buyer.

**MOVEMENT OF CARGO:** Barges will move only at the convenience of Carrier, and either singly or with one or more other barges. Carrier is not bound to transport the cargo by any particular craft, or in time for any particular market or otherwise than with reasonable dispatch. Carrier shall have the right to shift or interchange the tow from one to another towing vessel as frequently as it may find it convenient to do so, or to procure towage from any other vessel not owned or operated by Carrier, or to tie off the tow at any point and for any purpose, and to deviate from its route, and visit any port whether or not on said route, and in any order. Seller does not determine the particular route taken by Carrier or the particular fleeting facilities used by Carrier, and Buyer understands and agrees that Seller has no responsibility to determine or choose either the route or particular fleeting facilities used by the Carrier.

**PAYMENT OF FREIGHT:** When the barge initially starts on its voyage, the entire amount of the freight charge shall become earned and due and payable to Seller in cash or check or wire transfer without discount, cargo lost or not lost, damaged or not damaged, in whole or in part, at any stage of the voyage. Seller will have a lien upon all cargo for any amount due hereunder, including demurrage, which lien will survive delivery of the cargo. Seller also will have a lien on all freights or subfreights owed to Buyer by the cargo owner or consignee, for any amount due hereunder, including demurrage. All freight, demurrage and other charges shall be subject to an interest charge of 1-1/2% per month beginning on the first day after the due date of invoice. Buyer also shall pay all costs and reasonable attorney's fees incurred by Seller for the collection of all charges due and payable to Seller under this Agreement. Buyer further agrees that interest shall continue to accrue, both before and after any judgment, at the same rate as set forth herein, until all amounts of principal and interest due are paid in full.

**TOLLS, TAXES, OR USER CHARGES:** Should any barge dockage, wharfage charge, waterway toll, user tax, user charge or any equivalent of the same, be levied, charged, or increased relating to the transportation to be performed hereunder or the equipment or fuel used in performing such transportation, the cost of such toll, charge, tax or equivalent shall be added to the rates quoted on page 1, item 7 of this Agreement.

**FUEL PROTECTION:** Cargo movements under this Agreement may be subject to a fuel surcharge based on the actual price of marine diesel fuel for the previous month or quarter. If such surcharge is implemented either on a monthly, quarterly, or other basis, Seller shall notify Buyer in writing of the amount of the surcharge and the applicable period.

**BARGE CANCELLATIONS:** Barge cancellations made at least seven (7) days prior to the applicable ETA of the vessel at the time of cancellation shall be made at no charge. Barge cancellations made within seven (7) days of the applicable ETA of the vessel at the time of cancellation may subject Buyer to cancellation charges.

**BARGE DIVERSIONS/RECONSIGNMENTS:** Diversion/reconsignment of barges is not guaranteed and Seller will not be required to accept requests for diversions or reconsignments. Rather, each request shall be considered separately, to ascertain if there are additional costs involved. If a diversion/reconsignment is accepted, it shall be at Buyer's additional cost and based on the applicable rate to the new destination.

Page **2** of **4**

**CARGO:** Seller does not have exact knowledge of the quantity, quality, condition, contents or value of the cargo. No claims for variance of weight due to natural shrinkage shall be allowed. Seller shall not arrange transportation for nor be liable in any way for any documents or any articles of extraordinary value. Buyer shall supply a current, original Material Safety Data Sheet for any cargo to be carried hereunder to Seller promptly upon Seller's request. Seller shall not be liable for rust, oxidation or any damage to any cargo arising out of, related to, or due to inherent vice, condensation, or atmospheric conditions.

**FORCE MAJEURE:** Performance under this Contract by Buyer and Seller shall be excused to the extent such performance is prevented by Force Majeure, provided the party declaring Force Majeure gives written notice of such condition to the other party within a reasonable period of time after commencement of the Force Majeure condition. The term "Force Majeure" shall include hurricanes, windstorm or other acts of God or the elements, act of a public enemy, insurrection, riots, strikes, labor disputes, floods, accidents or blockage of navigation, ice, high or low water, embargos, or acts or orders of civil or military authorities, or any cause of like or different kind beyond the reasonable control of the parties of this Agreement. Such excuse from performance shall continue until the Force Majeure ceases to exist. A party declaring Force Majeure shall make commercially reasonable efforts to eliminate or resolve the condition, recognizing, however, that the settlement of any strike or other labor dispute shall be solely within the discretion of that party. A declaration of Force Majeure by Buyer does not excuse payment of demurrage for a barge on demurrage status, nor shall it relieve Buyer from responsibility for a barge in its custody. When Force Majeure is declared on a barge with remaining free time, free time shall continue to run; upon expiration of free time, the barge will be placed in demurrage status even if the Force Majeure event continues to exist. Any shortfall in cargo deliveries resulting from Force Majeure will be at the discretion of Seller. All obligations under this Agreement with respect to other and future barge placements and acceptances shall continue in full force and effect.

**BILL(S) OF LADING:** The parties to this Agreement shall be governed by the terms of the bill of lading issued by the Carrier to cover the transportation of the cargo to be transported under this Agreement.

**CARRIER LIABILITY:** Carrier shall be liable for any loss of or damage to the shipment herein described to the extent provided by the common law as modified by the statutes of the United States in accordance with the terms and provisions contained in this Agreement and in the bill of lading under which the shipment is transported. Carrier shall not be liable for lost profits or other consequential damages under any circumstances. It is agreed and understood by the parties to this Agreement that Seller is not the Carrier and assumes no responsibility as Carrier. Accordingly, Buyer agrees that it shall not have any right of recovery and shall not file suit or initiate any legal action against Seller for any damages or losses incurred due to Carrier's fault, breach of contract, breach of warranty of workmanlike performance, or unseaworthiness of Carrier's barge(s). Further, Buyer agrees that it will defend, hold harmless, and indemnify Seller in the event that Buyer's underwriters, insurers, agents, or any other entity seeks recovery on account or behalf of Buyer against Seller for such losses or damages. Buyer shall honor its indemnity obligations set forth herein and failure to do so will be considered a material breach of this Agreement. In the event that Seller is required to seek judicial enforcement of the contractual indemnity obligations of Buyer set forth above, Seller shall be entitled to recover all reasonable attorney's fees, costs, expenses, and interest incurred in connection with seeking enforcement of that claim.

**CONSEQUENTIAL DAMAGES:** Buyer specifically acknowledges and agrees that, in no instance, and under no circumstances, shall Seller be liable for any consequential damages whatsoever, including, but not limited to, lost profits, depreciation in market value of cargo, or loss of business opportunities arising out of or in connection with this Agreement.

**CARRIER'S TERMS INCORPORATED:** In addition to the terms and conditions set forth in this Agreement, the services performed hereunder are subject to the schedule of rules, regulations, terms and conditions published by the Carrier in effect on the date hereof, a copy of which is available to the Buyer. In the event of any inconsistency or conflict between such schedule and this Agreement, this Agreement shall govern.

**OTHER:** If due to river conditions (such as ice, high water, low water, lock closures, etc.), Carrier is unable to get barges to final destination, Buyer will have the option to reconsign those barges or Carrier will put those barges on demurrage (at rates listed above) at the nearest point to final destination until such time as Carrier can safely move said barges.

**APPLICABLE LAW:** The parties to this Agreement hereby agree that this Agreement and all claims and disputes arising under, in connection with, or incident to this Agreement, shall be governed by and construed pursuant to the general maritime law of the United States or, in the event the choice of the general maritime law is deemed unenforceable, by the laws of the State of Louisiana, excluding any choice of law rule that may direct the application of the laws of any other state or country.

**EXCLUSIVE JURISDICTION:** The parties to this Agreement hereby agree that all claims and disputes arising under, in connection with, or incident to this Agreement, shall be filed in a federal court in the State of Louisiana, to the exclusion of any other courts in any state or country. In the event the federal courts of Louisiana are deemed not to have subject matter jurisdiction, the parties agree that the aforementioned claims shall be filed in a state court of the State of Louisiana. Buyer hereby agrees to subject itself to personal jurisdiction in the federal and state courts in Louisiana for any claims or disputes arising hereunder and waives any objections it might otherwise have to personal jurisdiction and venue in the courts, federal or state, of Louisiana.

**SEVERABILITY CLAUSE:** In the event that one or more of the provisions of this Agreement, for any reason, is held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision or provisions had never been contained herein.

**ELECTRONIC COMMUNICATIONS:** It is the intent of the parties to this Agreement to transact business related to the Agreement through electronic means, and each party recognizes the legitimacy of all electronic records, electronic contracts, and electronic signatures, in accordance with the provisions with the Louisiana Uniform Electronic Transactions Act, LA. R.S. 9:2601 et seq.

**NOTE:** This agreement without immediate written notice to Celtic Marine Corporation by fax or email, of error, or any shipment of cargo by Buyer, is acknowledgement of the acceptance of the terms and conditions contained herein.

Basin Commerce, Inc.
Buyer
Mr. Scott Stefan
261 School Avenue
Suite 310
Excelsior, MN 55331


By: _____

Print _____
Name:  Buyer's duly authorized representative

Celtic Marine Corporation
Seller
Mr. Tim Klein
3888 S. Sherwood Forest Blvd.
Celtic Centre Building 1
Baton Rouge, LA 70816

By: _____

Print _____
Name:  Seller's duly authorized representative

Page **4** of **4**

## Karen Tony

| | |
|---|---|
| **From:** | Karen Tony |
| **Sent:** | Friday, April 27, 2018 4:49 PM |
| **To:** | 'scott@basincommerce.com' |
| **Cc:** | Tim Klein |
| **Subject:** | Spot Contract |
| **Attachments:** | Basin Commerce Spot Contract 0422.pdf |

Good afternoon Scott,

Please find the attached spot contract for the two barges going from Winona, MN to New Orleans, LA. Please send us back a signed copy.

Thanks and have a great weekend!
Karen

Exhibit A-2

## Tim Klein

| | |
|---|---|
| **From:** | Tim Klein |
| **Sent:** | Thursday, July 19, 2018 11:01 AM |
| **To:** | 'Scott Stefan' |
| **Subject:** | FW: Winona |
| **Attachments:** | Basin Commerce Spot Amendment 0422.pdf |

Here's the follow up to that conversation..

After this email, you agreed to roll one to June and keep the other one on CP as of 5/16, and we sent you an amendment confirming this. ( enclosed )

**From:** Tim Klein
**Sent:** Thursday, May 17, 2018 8:52 AM
**To:** 'Scott Stefan' <scott@basincommerce.com>
**Subject:** RE: Winona

Scott,
Good morning, please confirm per below that we are going with the CP of those 2 barges @ Winona as of 5/16.
( or rolling one to June, but we need to confirm that asap this morning! )

Thanks,
Tim

**From:** Tim Klein
**Sent:** Wednesday, May 16, 2018 3:05 PM
**To:** 'Scott Stefan' <scott@basincommerce.com>
**Subject:** RE: Winona

Ok, so if they don't want to cancel - the only other option is they now have 2 barges placed to them as of this morning at Winona:

MTC 852B
MTC 691B

They get 3 free days, then 10 days @ ████████ , then ████████████ thereafter a/c to standard grain terms
Do they fully understand and accept that?

Do they want to try to roll at least one of them to June as we suggested?

Thanks,
Tim

**From:** Scott Stefan [mailto:scott@basincommerce.com]
**Sent:** Wednesday, May 16, 2018 2:20 PM
**To:** Tim Klein <tklein@celticmarine.com>
**Subject:** Re: Winona

1

Yeah that's too much.   They won't pay that.

Scott Stefan
Basin commerce/iBook freight
V.P. Sales and New Business Development
BasinCommerce.com
m: 612.741.0888

This message was sent via cell phone, please excuse any typos.


On May 16, 2018, at 11:40 AM, Tim Klein <tklein@celticmarine.com> wrote:

> You're looking at close to ███ per barge given today's market ███
> We need confirmation that they agree to pay that.
>
> I personally think they're better off rolling one to June, and cancel one nearby to save the costs.
> We won't have barges up there until later in June, they should be loading by that time?
>
> Either way – need confirmation please.
> Thanks,
> Tim

| | |
|---|---|
| Tim Klein | tklein@celticmarine.com |
| Executive Vice President | www.celticmarine.com |
| Sales and Marketing | Phone: 773-774-2569 |
| Celtic Marine and Logistics | Fax: 773-774-2573 |
| | Cell: 773-255-7767 |

<cmc20ed08>

**From:** Tim Klein
**Sent:** Wednesday, May 16, 2018 11:35 AM
**To:** 'Scott Stefan' <scott@basincommerce.com>
**Subject:** RE: Winona

Scott,

Okay so, are they prepared to cancel both barges and pay the freight difference?

Thanks,
Tim

**From:** Scott Stefan [mailto:scott@basincommerce.com]
**Sent:** Wednesday, May 16, 2018 11:32 AM
**To:** Tim Klein <tklein@celticmarine.com>
**Subject:** Re: Winona

Tim,
With what I am hearing about the plant we should let the barges go.

It is just too unpredictable at this time to make a commitment.

2

Scott Stefan
Basin commerce/iBook freight
V.P. Sales and New Business Development
BasinCommerce.com
m: 612.741.0888

This message was sent via cell phone, please excuse any typos.

On May 16, 2018, at 9:51 AM, Tim Klein <tklein@celticmarine.com> wrote:

> Scott,
>
> Here's what I received this morning — please push these guys for an answer quickly so we don't have this up in the air.
> Everyone has been very patient with CP dates waiting for their decisions.
>
> Thanks,
> Tim
>
> Morning Tim-
>
> We will be putting both barges on placement today. I've given these guys a week & a half to figure something out. It cost me ████ to relo them on top of wasting 9 barge days.

| Tim Klein | tklein@celticmarine.com |
|---|---|
| Executive Vice President | www.celticmarine.com |
| Sales and Marketing | Phone: 773-774-2569 |
| Celtic Marine and Logistics | Fax: 773-774-2573 |
| | Cell: 773-255-7767 |

<cmcdfd784>

3



## Celtic Marine and Logistics
### A FULL SERVICE LOGISTICS COMPANY

3888 S. Sherwood Forest Boulevard ▪ Celtic Centre Building I ▪ Baton Rouge, Louisiana 70816
Office: 225-752-2490 ▪ Fax: 225-752-2582 ▪ E-mail: info@celticmarine.com

## 2018 SPOT SERVICE AGREEMENT AMENDMENT I
## CONTRACT #0422

**BUYER:**    MR. SCOTT STEFAN                              SALE #0422
              BASIN COMMERCE, INC.                          DATE: 05/18/2018
              261 SCHOOL AVENUE
              SUITE 310
              EXCELSIOR, MN 55331

**DEAR SCOTT:**

**PLEASE AMEND ORIGINAL CONTRACT TO THE FOLLOWING:**

**BARGE MTC 852 WILL ROLL INTO JUNE AT THE ORIGINAL CONTRACT TERM AND RATE. THIS BARGE WILL BE TAKEN OFF PLACEMENT AS OF 5/18. THE AMENDED CONTRACT TERMS WILL INCORPORATE A MINIMUM OF 10-DAY PRE-ADVICE FOR NEW BARGE REPLACEMENT IN JUNE 2018.**

**THE REMAINING BARGE MTC 691 WILL REMAIN ON PLACEMENT AS OF 0700 5/16, AT ORIGINAL CONTRACT RATE AND TERMS.**

All other terms and conditions of this agreement remain as originally agreed upon. The confirmation without immediate notice to us, by fax, or error, is acknowledgment of the acceptance of the conditions of the confirmation.
Please sign and return duplicate copy.

Accepted this _____ day of _____ 20___

By    _____

For   _____

Celtic Marine Corporation

By _____
       Tim Klein



# Celtic Marine and Logistics

**A FULL SERVICE LOGISTICS COMPANY**

3888 S. Sherwood Forest Boulevard ▪ Celtic Centre Building I ▪ Baton Rouge, Louisiana  70816
Office:  225-752-2490 ▪ Fax:  225-752-2582 ▪ E-mail:  info@celticmarine.com

## 2018 SPOT SERVICE AGREEMENT AMENDMENT I
## CONTRACT #0422

**BUYER:**     **MR. SCOTT STEFAN**                              **SALE #0422**
**BASIN COMMERCE, INC.**                       **DATE: 05/18/2018**
**261 SCHOOL AVENUE**
**SUITE 310**
**EXCELSIOR, MN 55331**

**DEAR SCOTT:**

**PLEASE AMEND ORIGINAL CONTRACT TO THE FOLLOWING:**

**BARGE MTC 852 WILL ROLL INTO JUNE AT THE ORIGINAL CONTRACT TERM
AND RATE. THIS BARGE WILL BE TAKEN OFF PLACEMENT AS OF 5/18.
THE AMENDED CONTRACT TERMS WILL INCORPORATE A MINIMUM OF 10-DAY
PRE-ADVICE FOR NEW BARGE REPLACEMENT IN JUNE 2018.**

**THE REMAINING BARGE MTC 691 WILL REMAIN ON PLACEMENT AS OF 0700 5/16,
AT ORIGINAL CONTRACT RATE AND TERMS.**

All other terms and conditions of this agreement remain as originally agreed upon. The confirmation without immediate notice to us, by fax, or error, is acknowledgment of the acceptance of the conditions of the confirmation.
Please sign and return duplicate copy.

Accepted this _____ day of _____ 20____

By          _____

For         _____

Celtic Marine Corporation

By _____
       Tim Klein

## Karen Tony

| | |
|---|---|
| **From:** | Karen Tony |
| **Sent:** | Friday, May 18, 2018 4:29 PM |
| **To:** | 'scott@basincommerce.com' |
| **Cc:** | 'liz@basincommerce.com'; Tim Klein |
| **Subject:** | Amendment |
| **Attachments:** | Basin Commerce Spot Amendment 0422.pdf |

Good afternoon Scott and Liz,

Please find the attached spot amendment for barge MTC 852. Please send us back a signed copy.

Thanks and have a good weekend!
Karen

1

## Cassedy, Robin

**Subject:** FW: Celtic Marine vs. Basin Commerce
**Attachments:** Celtic Marine vs. Basin Commerce - Complaint (N1528768xB08FB).pdf; ATT00001.htm; Exhibit B to Complaint - 2018 Spot Service Agreement Amendment I Contract #0422 (N1527462xB08FB).pdf; ATT00002.htm; Exhibit A to Complaint - 2018 Spot Service Agreement Contract #0422 (N1527460xB08FB).pdf; ATT00003.htm

**From:** Patricia Krebs
**Sent:** Wednesday, August 29, 2018 9:59 AM
**To:** jrobbins@MesserliKramer.com
**Subject:** Fwd: Celtic Marine vs. Basin Commerce

Good morning, Jeff.

As you have not returned any of my last several calls and Michael O'Connor has not received an offer from Basin's CEO to pay any of the money Basin owes to Celtic on its prior contract, we have retained outside counsel to prepare for litigation.

Attached is a courtesy copy of the complaint that we will instruct counsel to file if this matter is not settled by noon central time on Tuesday, September 4, 2018.

Michael O'Connor will be available to discuss with Basin's CEO and I will be available to discuss with you before then in the hope of avoiding further attorney fees and costs.

Sincerely,
Patricia

This e-mail transmission, and any documents, files or e-mail messages attached to it, may contain confidential information that is attorney work product or legally privileged. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please notify us by telephone at 504-582-3800 (fax 504-582-1233 )immediately, and destroy the original transmission and its attachments without reading them.

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast**

Exhibit B

**Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

Exhibit B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CELTIC MARINE CORPORATION | CIVIL ACTION NO.: |
| VERSUS | SECTION: |
| BASIN COMMERCE, INC. | MAGISTRATE: |
| | JUDGE: |

## **COMPLAINT**

The Complaint of Plaintiff, Celtic Marine Corporation ("Celtic Marine"), respectfully avers as follows:

1.

Celtic Marine is a Louisiana corporation with its domicile address in Baton Rouge, Parish of East Baton Rouge, Louisiana.

2.

Made Defendant herein is Basin Commerce, Inc. ("Basin Commerce"), a foreign corporation incorporated under the laws of Minnesota that is not licensed to do business in the State of Louisiana but which is doing business in the State of Louisiana.

Exhibit C

3.

Jurisdiction is proper in this Court, as the dispute among the parties arises out of a maritime contract.

4.

Venue is proper, as the contract between the parties contains a venue provision calling for litigation in the federal courts of Louisiana of any claim or dispute arising under, in connection with, or incidental to the contract. Pursuant to the terms of the contract, Basin Commerce agreed to subject itself to personal jurisdiction in Louisiana federal and state courts. Further, venue is proper under 33 U.S.C. §1391, as a substantial part of the events giving rise to Celtic Marine's claims occurred in this district.

5.

Basin Commerce entered into a contract with Celtic Marine entitled "2018 Spot Service Agreement – Contract #0422" ("the Agreement"), pursuant to which Celtic Marine agreed to provide, and Basin Commerce agreed to pay for, barges and barge transportation services for a minimum of 1,600 standard tons of distillers dry grain per barge from Winona, Minnesota, to New Orleans, Louisiana. Specifically, Celtic Marine agreed to provide two barges: MTC 852B, to be put on placement the week of April 30, 2018, and MTC 691B, to be put on placement the week of May 7, 2018. Exact placement dates were to be worked out. (*See* Agreement, attached hereto as Exhibit A, redacted only as to price.)

6.

The Agreement provided, in pertinent part: "All freight, demurrage and other charges shall be subject to an interest charge of 1-1/2% per month beginning on the first day after the due

Exhibit C

date of invoice. Buyer also shall pay all costs and reasonable attorney's fees incurred by Seller for the collection of all charges due and payable to Seller under this Agreement."

7.

A representative of Celtic Marine signed the Agreement and sent it to Basin Commerce on April 27, 2018. Basin Commerce did not inform Celtic Marine of any objection to the Agreement or the terms contained therein at that time, as explicitly required by the Agreement.

8.

Pursuant to its obligations under the Agreement, Celtic Marine made arrangements with vendors to provide services related to Defendants' cargo, including, but not limited to, entering into an agreement with a carrier to provide covered hopper barges to carry the distillers dry grain.

9.

By mid-May 2018, the two barges had not been loaded. On May 16, 2018, Celtic Marine informed Basin Commerce that the carrier would be putting both barges on placement that day. Although representatives of Celtic Marine and Basin Commerce discussed cancelling the barges, Basin Commerce rejected this option due to the associated cancellation fees. Celtic Marine and Basin Commerce therefore agreed that MTC 852 would be taken off placement and rolled over to June. MTC 691 would remain on placement.

10.

Celtic Marine sent an amendment to the Agreement entitled 2018 Spot Service Agreement Amendment I – Contract #0422 ("Amendment to Agreement") to Basin Commerce on May 18, 2018, which confirmed that MTC 852B would be rolled over to June and MTC 691B would remain on placement. (*See* Amendment to Agreement, attached hereto as Exhibit B.)

Exhibit C

Basin Commerce did not inform Celtic Marine of any objection to the Amendment to Agreement or the terms contained therein at that time, as explicitly required by the Amendment to Agreement.

11.

Neither barge had been loaded by the end of June 2018. Barge FJPB205b, which replaced barge MTC 852B, was put on placement on June 30, 2018.

12.

Celtic Marine has requested payment from Basin Commerce in the amount of $45,800 in demurrage and cancellation fees. As of the filing of this Complaint, that amount remains unpaid.

**COUNT ONE:  BREACH OF CONTRACT –
FAILURE TO PAY FOR SERVICES RENDERED**

13.

Basin Commerce's refusal to honor its obligations under the Agreement constitutes a breach of the Agreement.

14.

As a result of Basin Commerce's failure to honor its obligations under the Agreement, Celtic Marine has had to engage lawyers and incur fees and costs in the collection of the outstanding charges owed by Basin Commerce to Celtic Marine.  Pursuant to the Agreement, Celtic Marine is entitled to reasonable attorney's fees and costs from Basin Commerce associated with this litigation.

**COUNT TWO:  ESTOPPEL AND DETRIMENTAL RELIANCE**

15.

In addition, or in the alternative, Basin Commerce is liable under the general maritime law and Article 1967 of the Louisiana Civil Code because Basin Commerce represented its

Exhibit C

desire for Celtic Marine to arrange for transportation related services for it; Basin Commerce knew or should have known that Celtic Marine would rely on these representations to its detriment; and, relying on Basin Commerce's promise pay for such services, Celtic Marine in fact arranged for such services to its detriment.

WHEREFORE, Celtic Marine Corporation prays (1) that Basin Commerce, Inc., be cited and served with the complaint of Celtic Marine Corporation and required to answer same; and (2) that, after the delays provided by law, there be judgment in favor of Celtic Marine Corporation and against Basin Commerce, Inc., in the total principal amount of $45,800 as provided for by the Agreement, together with attorney's fees, costs and interest pursuant to the Agreement in addition to all interest allowed by law.

Further, Celtic Marine prays for all other relief to which it may be entitled in law or equity.

Respectfully submitted,

*/s/ Robin D. Cassedy*
ROBIN D. CASSEDY, #36408
KING & JURGENS, LLC
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233
rcassedy@kingjurgens.com

Attorney for Celtic Marine Corporation

Exhibit C

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by electronic filing on the Court's CM/ECF case management system and either by hand delivery, email, facsimile or by placing the same in the United States mail, properly addressed and postage pre-paid, this 4th day of September, 2018.

*/s/ Robin D. Cassedy*
ROBIN D. CASSEDY

Exhibit C



# Celtic Marine and Logistics

**A FULL SERVICE LOGISTICS COMPANY**

3888 S. Sherwood Forest Boulevard ▪ Celtic Centre Building I ▪ Baton Rouge, Louisiana 70816
Office: 225-752-2490 ▪ Fax: 225-752-2582 ▪ E-mail: info@celticmarine.com

## 2018 SPOT SERVICE AGREEMENT
## CONTRACT #0422

This Spot Service Agreement (Agreement) is entered into and made effective this 27th day of April 2018, between Celtic Marine Corporation (Seller) and Basin Commerce, Inc., with an address of 261 School Avenue, Suite 310, Excelsior, MN 55331 (Buyer). Seller and Buyer agree that Seller will provide the barge the barge transportation services under the terms and conditions specified below.

### TERMS AND CONDITIONS

| | |
|---|---|
| **CARGO:** | Distillers Dry Grain |
| **QUANTITY:** | Two Barges / Approximately 3200 ST |
| **EQUIPMENT:** | Covered hopper barges |
| **ORIGIN(S):** | Winona, MN (CD Corp) |
| **DESTINATION(S):** | New Orleans, LA (Mile 86.5 to Mile 180 LM) |
| **PLACEMENT PERIOD:** | 1 Barge – Mid to Late Week of April 30, 2018 – MTC 852B<br>1 Barge – Week of May 7, 2018 – MTC 691B<br>CP date to be worked out |
| **RATE(S):** | ████████████████ |
| **MINIMUM BILLING WEIGHT:** | 1600 ST |
| **FUEL ADJUSTMENT:** | N/A |
| **FREE TIME:** | 3 AP Shex at Origin / 3 AP Shex at Destination |
| **DEMURRAGE:** | ████████████████████████ |
| **COVER HANDLING:** | Carrier will provide covered hopper barge (s) to buyer with the covers spread. All cover handling costs to facilitate loading and/or unloading at origin and/or destination will be for the account of buyer. |
| **CLEANING CHARGES:** | Buyer responsible for any cleaning charges over and above normal and customary. |
| **PAYMENT TERMS:** | Net 30 days from date of invoice |
| **VESSEL-S/S AGENT:** | None |
| **MISCELLANEOUS:** | None |

Page **1** of **4**

**PARTIES:**  As stated at the outset of this Agreement, the term "Seller" as used herein shall refer to Celtic Marine Corporation.  Seller may assign this Agreement and the rights and obligations hereunder, but any such assignment shall not relieve Seller of its responsibilities for the performance of this Agreement.  The term "Carrier" as used herein does not refer to Celtic Marine Corporation and shall not be deemed to include Celtic Marine Corporation, but shall refer to and include any entity or person rendering the transportation arranged by Seller hereunder.  The term "Buyer" as used herein shall refer to the entity so designated on the first page of this Agreement.  Buyer agrees that it is obligated for the payment of freight as set forth in this Agreement, regardless of whether it owns the cargo or whether it buys the services set forth in this Agreement on behalf of another entity or individual.

**NOTICE:** Carrier will require 14 days advance notice for any loadings.  Failure to supply 14 days advance notice could result in carrier's inability to provide the barges required.

**ETAs/ORIGIN:**  Any change in vessel ETA, constructive placement date request, or designated origin given to Seller in excess of 120 hours prior to the previous ETA will be accepted without charge.  Any vessel ETA or designated origin change made on less than 120 hours notice could be subject to charges including but not limited to assessment of free days, and additional charges for shifting, fleeting, barge cleaning, or cover handling.

**CARRIER'S TARIFF:** In addition to the terms and conditions set forth in this Agreement, the services performed hereunder are subject to the rules and regulations published in the carrier's tariff, as supplemented, and the terms and conditions of carrier's bill of lading, copies of which are available to Buyer.  In the event of any inconsistency or conflict between carrier's tariff, as supplemented, or the bill of lading, and the terms of this Agreement, the terms of this Agreement shall govern.

**PLACEMENT:**   Rates stated herein shall include only one actual placement of barges by Seller at origin and one placement at destination.  Carrier will be responsible for only the first shift to and from origin and destination docks; free time will commence upon the first placement and will run (as will demurrage) until the barge is released.  Any additional shifting of barges to accommodate loading or unloading shall be for Buyer's account and, if performed by Seller or Carrier, will be charged at Seller's prevailing rate for such service.

**BARGE RELEASES:** Barge release information must be sent to Seller via fax (225) 752-2582 and/or email to operations@celticmarine.com.

**CLEANING AND ACCEPTANCE:** Seller shall tender barges of a type and condition suitable for the cargo to be carried.  Commencement of loading of the barges shall constitute Buyer's acceptance of the condition and suitability of the barges for the intended cargo.  Rates do not include cleaning expense above the maximum stated on page 1 of this Agreement or that results from cargo or debris left aboard the barge in excess of normal cleaning (including working surfaces, gunnels, covers, decks, etc.) by Buyer or its agents at both loading and unloading points.  Any charges (including charges for lost barge days computed under the provisions hereof) encountered by Seller above the maximum allowed on page 1 of this Agreement or for removal of such cargo or debris shall be in addition to the rate and for Buyer's account.

**LOADING AND UNLOADING:**  Proper and prompt loading and unloading of cargo shall be Buyer's responsibility and shall be accomplished by Buyer at its sole expense.  Buyer shall comply with Carrier's instructions regarding height of load, weight of cargo, draft of barge and such other instructions as Carrier may deem desirable for safe transportation.  Buyer shall be subject to the demurrage charges provided above for any delay or detention of barges occasioned by non-compliance with Carrier's instructions.  Buyer shall distribute cargo in barge to ensure an even draft.  If not so loaded, Buyer shall, at its expense, make such redistribution as will meet Carrier's requirements, in which event the barge shall be subject to demurrage charges provided above from time of placement of barge until acceptance of barge by Seller.  Any additional cost or expense incurred by Seller as a result of improper loading or unloading shall be for the account of Buyer.  Further, Buyer shall be responsible for the prompt unloading of the cargo at destination and shall be liable for any deterioration or damage to the cargo and shall be responsible for payment of all additional freight and demurrage that incurred for any delay in unloading of cargo by Buyer.

**MOVEMENT OF CARGO:**  Barges will move only at the convenience of Carrier, and either singly or with one or more other barges.  Carrier is not bound to transport the cargo by any particular craft, or in time for any particular market or otherwise than with reasonable dispatch.  Carrier shall have the right to shift or interchange the tow from one to another towing vessel as frequently as it may find it convenient to do so, or to procure towage from any other vessel not owned or operated by Carrier, or to tie off the tow at any point and for any purpose, and to deviate from its route, and visit any port whether or not on said route, and in any order.  Seller does not determine the particular route taken by Carrier or the particular fleeting facilities used by Carrier, and Buyer understands and agrees that Seller has no responsibility to determine or choose either the route or particular fleeting facilities used by the Carrier.

**PAYMENT OF FREIGHT:**  When the barge initially starts on its voyage, the entire amount of the freight charge shall become earned and due and payable to Seller in cash or check or wire transfer without discount, cargo lost or not lost, damaged or not damaged, in whole or in part, at any stage of the voyage.  Seller will have a lien upon all cargo for any amount due hereunder, including demurrage, which lien will survive delivery of the cargo.  Seller also will have a lien on all freights or subfreights owed to Buyer by the cargo owner or consignee, for any amount due hereunder, including demurrage.  All freight, demurrage and other charges shall be subject to an interest charge of 1-1/2% per month beginning on the first day after the due date of invoice.  Buyer also shall pay all costs and reasonable attorney's fees incurred by Seller for the collection of all charges due and payable to Seller under this Agreement.  Buyer further agrees that interest shall continue to accrue, both before and after any judgment, at the same rate as set forth herein, until all amounts of principal and interest due are paid in full.

**TOLLS, TAXES, OR USER CHARGES:**  Should any barge dockage, wharfage charge, waterway toll, user tax, user charge or any equivalent of the same, be levied, charged, or increased relating to the transportation to be performed hereunder or the equipment or fuel used in performing such transportation, the cost of such toll, charge, tax or equivalent shall be added to the rates quoted on page 1, item 7 of this Agreement.

**FUEL PROTECTION:**  Cargo movements under this Agreement may be subject to a fuel surcharge based on the actual price of marine diesel fuel for the previous month or quarter.  If such surcharge is implemented either on a monthly, quarterly, or other basis, Seller shall notify Buyer in writing of the amount of the surcharge and the applicable period.

**BARGE CANCELLATIONS:**  Barge cancellations made at least seven (7) days prior to the applicable ETA of the vessel at the time of cancellation shall be made at no charge.  Barge cancellations made within seven (7) days of the applicable ETA of the vessel at the time of cancellation may subject Buyer to cancellation charges.

**BARGE DIVERSIONS/RECONSIGNMENTS:**  Diversion/reconsignment of barges is not guaranteed and Seller shall not be required to accept requests for diversions or reconsignments.  Rather, each request shall be considered separately, to ascertain if there are additional costs involved.  If a diversion/reconsignment is accepted, it shall be at Buyer's additional cost and based on the applicable rate to the new destination.

Revision Oct 2017

Exhibit C

**CARGO:** Seller does not have exact knowledge of the quantity, quality, condition, contents or value of the cargo. No claims for variance of weight due to natural shrinkage shall be allowed. Seller shall not arrange transportation for nor be liable in any way for any documents or any articles of extraordinary value. Buyer shall supply a current, original Material Safety Data Sheet for any cargo to be carried hereunder to Seller promptly upon Seller's request. Seller shall not be liable for rust, oxidation or any damage to any cargo arising out of, related to, or due to inherent vice, condensation, or atmospheric conditions.

**FORCE MAJEURE:** Performance under this Contract by Buyer and Seller shall be excused to the extent such performance is prevented by Force Majeure, provided the party declaring Force Majeure gives written notice of such condition to the other party within a reasonable period of time after commencement of the Force Majeure condition. The term "Force Majeure" shall include hurricanes, windstorm or other acts of God or the elements, act of a public enemy, insurrection, riots, strikes, labor disputes, floods, accidents or blockage of navigation, ice, high or low water, embargos, or acts or orders of civil or military authorities, or any cause of like or different kind beyond the reasonable control of the parties of this Agreement. Such excuse from performance shall continue until the Force Majeure ceases to exist. A party declaring Force Majeure shall make commercially reasonable efforts to eliminate or resolve the condition, recognizing, however, that the settlement of any strike or other labor dispute shall be solely within the discretion of that party. A declaration of Force Majeure by Buyer does not excuse payment of demurrage for a barge on demurrage status, nor shall it relieve Buyer from responsibility for a barge in its custody. When Force Majeure is declared on a barge with remaining free time, free time shall continue to run; upon expiration of free time, the barge will be placed in demurrage status even if the Force Majeure event continues to exist. Any shortfall in cargo deliveries resulting from Force Majeure will be at the discretion of Seller. All obligations under this Agreement with respect to other and future barge placements and acceptances shall continue in full force and effect.

**BILL(S) OF LADING:** The parties to this Agreement shall be governed by the terms of the bill of lading issued by the Carrier to cover the transportation of the cargo to be transported under this Agreement.

**CARRIER LIABILITY:** Carrier shall be liable for any loss of or damage to the shipment herein described to the extent provided by the common law as modified by the statutes of the United States in accordance with the terms and provisions contained in this Agreement and in the bill of lading under which the shipment is transported. Carrier shall not be liable for lost profits or other consequential damages under any circumstances. It is agreed and understood by the parties to this Agreement that Seller is not the Carrier and assumes no responsibility as Carrier. Accordingly, Buyer agrees that it shall not have any right of recovery and shall not file suit or initiate any legal action against Seller for any damages or losses incurred due to Carrier's fault, breach of contract, breach of warranty of workmanlike performance, or unseaworthiness of Carrier's barge(s). Further, Buyer agrees that it will defend, hold harmless, and indemnify Seller in the event that Buyer's underwriters, insurers, agents, or any other entity seeks recovery on account or behalf of Buyer against Seller for such losses or damages. Buyer shall honor its indemnity obligations set forth herein and failure to do so will be considered a material breach of this Agreement. In the event that Seller is required to seek judicial enforcement of the contractual indemnity obligations of Buyer set forth above, Seller shall be entitled to recover all reasonable attorney's fees, costs, expenses, and interest incurred in connection with seeking enforcement of that claim.

**CONSEQUENTIAL DAMAGES:** Buyer specifically acknowledges and agrees that, in no instance, and under no circumstances, shall Seller be liable for any consequential damages whatsoever, including, but not limited to, lost profits, depreciation in market value of cargo, or loss of business opportunities arising out of or in connection with this Agreement.

**CARRIER'S TERMS INCORPORATED:** In addition to the terms and conditions set forth in this Agreement, the services performed hereunder are subject to the schedule of rules, regulations, terms and conditions published by the Carrier in effect on the date hereof, a copy of which is available to the Buyer. In the event of any inconsistency or conflict between such schedule and this Agreement, this Agreement shall govern.

**OTHER:** If due to river conditions (such as ice, high water, low water, lock closures, etc.), Carrier is unable to get barges to final destination, Buyer will have the option to reconsign those barges or Carrier will put those barges on demurrage (at rates listed above) at the nearest point to final destination until such time as Carrier can safely move said barges.

**APPLICABLE LAW:** The parties to this Agreement hereby agree that this Agreement and all claims and disputes arising under, in connection with, or incident to this Agreement, shall be governed by and construed pursuant to the general maritime law of the United States or, in the event the choice of the general maritime law is deemed unenforceable, by the laws of the State of Louisiana, excluding any choice of law rule that may direct the application of the laws of any other state or country.

**EXCLUSIVE JURISDICTION:** The parties to this Agreement hereby agree that all claims and disputes arising under, in connection with, or incident to this Agreement, shall be filed in a federal court in the State of Louisiana, to the exclusion of any other courts in any state or country. In the event the federal courts of Louisiana are deemed not to have subject matter jurisdiction, the parties agree that the aforementioned claims shall be filed in a state court of the State of Louisiana. Buyer hereby agrees to subject itself to personal jurisdiction in the federal and state courts in Louisiana for any claims or disputes arising hereunder and waives any objections it might otherwise have to personal jurisdiction and venue in the courts, federal or state, of Louisiana.

**SEVERABILITY CLAUSE:** In the event that one or more of the provisions of this Agreement, for any reason, is held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision or provisions had never been contained herein.

**ELECTRONIC COMMUNICATIONS:** It is the intent of the parties to this Agreement to transact business related to the Agreement through electronic means, and each party recognizes the legitimacy of all electronic records, electronic contracts, and electronic signatures, in accordance with the provisions with the Louisiana Uniform Electronic Transactions Act, LA. R.S. 9:2601 et seq.

**NOTE:** This agreement without immediate written notice to Celtic Marine Corporation by fax or email, of error, or any shipment of cargo by Buyer, is acknowledgement of the acceptance of the terms and conditions contained herein.

Page **3** of **4**

Basin Commerce, Inc.
Buyer
Mr. Scott Stefan
261 School Avenue
Suite 310
Excelsior, MN 55331


By: _____

Print _____
Name:  Buyer's duly authorized representative

Celtic Marine Corporation
Seller
Mr. Tim Klein
3888 S. Sherwood Forest Blvd.
Celtic Centre Building 1
Baton Rouge, LA 70816

By: _____

Print _____
Name:  Seller's duly authorized representative

Revision Oct 2017

Exhibit C



### Celtic Marine and Logistics

**A FULL SERVICE LOGISTICS COMPANY**

3888 S. Sherwood Forest Boulevard ▪ Celtic Centre Building I ▪ Baton Rouge, Louisiana  70816
Office:  225-752-2490 ▪ Fax:  225-752-2582 ▪ E-mail:  info@celticmarine.com

## 2018 SPOT SERVICE AGREEMENT AMENDMENT I
## CONTRACT #0422

**BUYER:**  MR. SCOTT STEFAN
BASIN COMMERCE, INC.
261 SCHOOL AVENUE
SUITE 310
EXCELSIOR, MN 55331

**SALE #0422**
**DATE: 05/18/2018**

DEAR SCOTT:

PLEASE AMEND ORIGINAL CONTRACT TO THE FOLLOWING:

BARGE MTC 852 WILL ROLL INTO JUNE AT THE ORIGINAL CONTRACT TERM
AND RATE. THIS BARGE WILL BE TAKEN OFF PLACEMENT AS OF 5/18.
THE AMENDED CONTRACT TERMS WILL INCORPORATE A MINIMUM OF 10-DAY
PRE-ADVICE FOR NEW BARGE REPLACEMENT IN JUNE 2018.

THE REMAINING BARGE MTC 691 WILL REMAIN ON PLACEMENT AS OF 0700 5/16,
AT ORIGINAL CONTRACT RATE AND TERMS.

All other terms and conditions of this agreement remain as originally agreed upon. The confirmation without immediate notice to us, by fax, or
error, is acknowledgment of the acceptance of the conditions of the confirmation.
Please sign and return duplicate copy.

Accepted this _____ day of _____ 20____

By      _____

For     _____

Celtic Marine Corporation

By _____
   Tim Klein

Exhibit C

**JS 44** (Rev. 06/17)   **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Celtic Marine Corporation

**(b)** County of Residence of First Listed Plaintiff   East Baton Rouge Parish
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Robin D. Cassedy, King & Jurgens, 201 St. Charles Ave., 45th Floor,
New Orleans, LA 701701, 504-582-3800

**DEFENDANTS**

Basin Commerce, Inc.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*            Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☒ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

*PERSONAL INJURY*
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
*Habeas Corpus:*
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
*Other:*
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1333
Brief description of cause:
Breach of maritime contract, detrimental reliance

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 45,800.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*   JUDGE _____   DOCKET NUMBER _____

DATE 09/04/2018   SIGNATURE OF ATTORNEY OF RECORD  _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Exhibit C

JS 44 Reverse  (Rev. 06/17)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation — Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Exhibit C