UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Basin Commerce, Inc.                          Civ. No. 18-2574 (PAM/BRT)

            Plaintiff,

v.                                **MEMORANDUM AND ORDER**

Celtic Marine Corporation,

            Defendant.

This matter is before the Court on Defendant's Motion to Transfer Venue. For the following reasons, the Motion is denied.

**BACKGROUND**

In April 2018, Plaintiff Basin Commerce, Inc., contacted Defendant Celtic Marine Corporation about procuring barges to ship distillers dry grain from an ethanol plant near Winona, MN, to a facility in Louisiana, where Celtic Marine is located. According to Basin, the parties' discussions were preliminary in nature and Basin did not ever specify a firm date for the shipments or any other details regarding the shipments. According to Celtic, the parties had a contract in the form of a "Spot Service Agreement" that Celtic signed and sent to Basin. (Compl. (Docket No. 1-1) Ex. A.) Celtic also argues that the parties amended this contract to roll one of the barges over to June 2018, and Celtic memorialized this in a 2018 Spot Service Agreement Amendment I, which provided that all other terms and conditions of the Spot Service Agreement remained in place. (Klein Decl. (Docket No. 8-2) Ex. A-4.) Celtic contends that it performed under the contracts by

arranging with vendors to provide services for the cargo, including securing hopper bags to carry the grain. Neither barge was ever loaded with grain. Celtic then requested $45,800 in cancellation and other fees, and threatened suit if Basin did not pay by September 4, 2018. (Def.'s Index (Docket No. 8-2) Ex. B.)

On September 4, Basin filed this lawsuit, seeking a declaration regarding the parties' rights and responsibilities toward each other, and specifically that Basin owes Celtic nothing. That same day, Celtic filed suit for breach of contract in federal court in New Orleans.

Celtic now seeks to transfer the venue of this action to Louisiana. According to Celtic, the Spot Service Agreement's forum-selection clause mandates the litigation of all disputes between the parties in Louisiana federal court. Celtic also contends that Basin "conceded" that the contract existed by pleading that Basin repudiated the contract. (Compl. ¶ 3.) But the Complaint avers that Celtic threatened Basin "pursuant to a contract which was never signed by Basin and which had previously been repudiated by Basin." (Id.) Basin has not conceded the existence of a contract.

**DISCUSSION**

This case initially turns on whether the parties had a contract. If Basin assented to the terms of the Spot Service Agreement, then it is bound to litigate in Louisiana. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Atlantic Marine Constr. Co. v. U.S. District Court for the W. Dist. of Tex., 571 U.S. 49, 62 (2013). The forum-selection clause in the Spot Service Agreement provides that "all claims and dispute arising under, in

2

connection with, or incident to this Agreement, shall be filed in a federal court in the State of Louisiana, to the exclusion of any other courts in any state or country." (Klein Decl. Ex. A-1 at 3.)

But at this early stage of the litigation, the Court cannot determine that the parties entered into a valid contract. Basin points to messages from May and June 2018 between its Vice President of Sales, Scott Stefan, and Celtic's Executive Vice President of Sales and Marketing, Tim Klein, contending that these messages establish that neither Stefan nor Basin committed to the barges, but rather Basin merely inquired about the availability of barges. (Stefan Decl. (Docket No. 24-1) Exs. A-1 to A-3.) Celtic argues that the parties' discussions before date of the messages in Stefan's declaration establish that there was an agreement in place. (Klein Supp'l Decl. (Docket No. 27-1) Ex. A-1.) Further, Celtic contends that Basin's failure to object to the Spot Service Agreement meant, by the terms of that agreement, that Basin ratified it. (See Klein Decl. Ex. A-1 at 3 (providing that the Agreement "without immediate written notice to Celtic . . . of error, or any shipment of cargo by Buyer, is acknowledgment of the acceptance of the terms and conditions contained herein").)

The evidence the parties submitted does not unequivocally establish their positions. The Court cannot say as a matter of law that there was a valid contract at this stage.

The parties point to no authority for this situation, where one party claims a valid contractual forum-selection clause and the other claims that the parties never entered into a contract. The Court's own research has revealed no pertinent authority, either. Because there are questions of fact regarding the existence of a valid contract, the Court will analyze

3

the matter under the § 1404(a) transfer factors.

This section provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The statute mandates three factors for a court to consider when determining whether transfer is appropriate: (1) the convenience of parties; (2) the convenience of witnesses; and (3) the interests of justice. However, a court is not limited to considering only these three factors, because transfer determinations "require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).

Although traditionally "federal courts give considerable deference to a plaintiff's choice of forum," id. at 695, more recent decisions have cast doubt on the level of deference due that choice. See Atlantic Marine, 571 U.S. at 62 n.6 (stating that "[t]he Court must also give some weight to the plaintiffs' choice of forum"). The party seeking a transfer bears the burden to establish that a change of forum is appropriate. Terra Int'l, 119 F.3d at 695. Finally, "section 1404(a) provides for a transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the burden to the party resisting the transfer." Graff v. Qwest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (Doty, J.).

A. **Convenience of Parties and Witnesses**

Celtic contends that, by contracting with a Louisiana corporation, Basin cannot argue that Louisiana is inconvenient. But whether there is a binding contract here is a

4

matter of much dispute. Merely contacting a vendor in another state cannot be sufficient to establish the convenience of litigating in that state. The convenience-of-parties factor is neutral.

Basin argues that the convenience of witnesses lies in Minnesota, because its witnesses are all in Minnesota, and Mr. Klein lives in Illinois, not Louisiana. Celtic responds that Mr. Klein "may not be the sole witness" for Celtic. (Def.'s Reply Mem. (Docket No. 26) at 11.) But if Celtic's witnesses might be inconvenienced by a trial in Minnesota, it bears the burden to specifically identify those witnesses. Moreover, in considering this factor, the focus must be on non-party witnesses, because "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." Advanced Logistics Consulting, Inc. v. C. Enyeart LLC, Civ. No. 09-720, 2009 WL 1684428, at *5 (D. Minn. June 16, 2009) (Kyle, J.) (quotation omitted). Celtic has not met its burden to establish that the convenience-of-witnesses factor favors a transfer. This factor weighs in favor of Basin.

**B.      Interests of Justice**

The Court must also consider various public-interest factors, such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n. 6 (1981) (quotation omitted).

The parties do not provide the Court with information regarding court congestion. Celtic contends that the contract mandates application of Louisiana law, making Louisiana

5

a better forum for the dispute. As discussed, Basin disputes the existence of a contract and contends that Minnesota law just as likely applies to the parties' relationship.

The parties focus their interests-of-justice arguments on the first-filed rule. Basin asserts that it filed first, while Celtic argues that the Court should not reward Basin's race to the courthouse because Basin only filed this case in response to Celtic's threatened lawsuit.

The first-filed rule is generally invoked to enjoin a party from proceeding with a later-filed action in another federal court. Minn. Mining & Mfg. Co. v. Rynne, 661 F.2d 722 (8th Cir. 1981). "The well-established rule is that in cases of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'" United States Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 488 (8th Cir. 1990) (quoting Orthmann v. Apple River Campground Inc., 765 F.2d 119, 121 (8th Cir. 1985)). However, that rule will "yield[] to the interests of justice, and will not be applied where a court finds 'compelling circumstances' supporting its abrogation." Northwest Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993) (citation omitted).

Celtic relies heavily on Northwest Airlines's discussion of factors that may lead a court to decline to apply the first-filed rule. These "red flags" include whether the first filer had notice that its opponent was considering filing suit, and the fact that the first-filed lawsuit is one for declaratory judgment, "as such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief." Id. at 1007.

Basin points out that the Northwest Airlines court affirmed the trial court's decision to enjoin the second-filed lawsuit. But the court also noted that the first filer did not have

6

any indication that the second lawsuit was imminent and waited six weeks after communicating with its opponent before filing the first lawsuit. Id. Here, on the other hand, Basin had notice that Celtic's lawsuit was imminent. Indeed, Celtic sent Basin its complaint on August 29, telling Basin that it would file the complaint on September 4, 2018. Thus, unlike in Northwest Airlines, this "red flag" deserves serious consideration, and Basin's lawsuit seeks only declaratory relief, not damages or other equitable relief.

The Court has considered the parties' arguments and determines that this situation does not warrant the application of the first-filed rule. But even in the absence of the first-filed presumption, and even if the interests of justice slightly favor a transfer, the other factors are either neutral or weigh against a transfer. As noted, it is Celtic's burden to establish that a transfer is required. The most Celtic has established is that Louisiana would be an equally convenient forum. This is not sufficient to establish entitlement to a transfer.

**CONCLUSION**

Celtic has not met its burden at this stage of the litigation to establish that a transfer is warranted. Accordingly, **IT IS HEREBY ORDERED that** Celtic's Motion to Transfer Venue (Docket No. 6) is **DENIED without prejudice**.

Dated: November 14, 2018                    *s/ Paul A. Magnuson*
                                            Paul A. Magnuson
                                            United States District Court Judge